# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**Alice M. Jones,**

      *Plaintiff*,

v.                                           **Case No. 3:04-cv-152**
                                                 **Judge Thomas M. Rose**

**Select Industries Corp. and Mike Dankworth,**

      *Defendants*.

---

**ENTRY AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.** DOC. 18.

---

Pending before the Court is Motion for Summary Judgment of Defendants Select Industries Corporation and Mike Dankworth. Doc. 18. Therein, Defendants request that the Court enter judgment for Defendants on Plaintiff's claims that Defendants have violated the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, Ohio's Prompt Pay Act, Ohio Rev. Code § 4113.15, and Ohio public policy. Defendants further seek a declaration that Plaintiff has failed to fully mitigate her damages. Because a jury construing the evidence in the light most favorable to Plaintiff could find in her favor on the FMLA claim, Defendants' motion will be denied on this claim. Because Plaintiff admits that she has not complied with the contractual prerequisites of the bonus referral system, the fruits of which she claims are owed to her, and because the Ohio Prompt Pay Act does not extend to bonuses, the motion will be granted with regard to the claimed violation of the Ohio Prompt Pay Act. Because Ohio does not recognize a cause of action for violation of Ohio public policy by virtue of violating the FMLA, Defendants' motion will be granted with regard to this claim. Because there

is a genuine issue of material fact concerning the question of whether Plaintiff fully mitigated her damages, Defendants' request for a declaration in this area will be denied.

**I.      Background**

Defendant Select Industries hired Plaintiff Alice M. Jones as a Machine Operator on September 30, 1996. See Complaint, ¶7. Once Jones became eligible for leave under the Family and Medical Leave Act ("FMLA") in September 1997, Jones began to use intermittent FMLA leave to care for her seriously ill nephew, Jeffrey Love, for whom she acted *in loco parentis*.

In May 2000, Jones received and signed for a copy of Select's Employee Handbook, which explained Select's policies on absenteeism and leaves of absence. (See Jones Depo. at 45, Ex. 1-2). Select's absenteeism policy used a point system for tracking employee attendance. Under this system, an employee is assessed 1/2 point for time away from work of four hours or less, including arriving late or leaving early (the threshold is five hours if the employee is on a ten-hour shift). (Jones Depo. at 48, Ex. 3). Employees are assessed 1 point for time away from work greater than four hours (five hours for a ten-hour shift). *Id.* Failure to appropriately clock in or out results in a 1/2 point under the policy. *Id.* If an employee serves thirty days without receiving any points, 1 point is deducted from their absence points. *Id.* Certain absences, including FMLA-protected ones, are counted as "excused" under the policy and do not carry any point penalties. However, the policy states that "chronic or patterned excused absences" may be reviewed and, if warranted, such absences "may be changed to unexcused." (Jones Depo. at 48, Ex. 3; see also Barr Depo. at 15, 19-21).

Based on the point system, Select's attendance policy calls for the following corrective actions as absences accumulate within a rolling twelve-month period:

| Number of Points | Action Taken |
|---|---|
| 3 | Counsel associate concerning policy and document discussion |
| 4 | Written reprimand/document |
| 5 | Final written warning |
| 5+ | Termination/document |

(Jones Depo. at 48, Ex. 3; Barr Depo at 15.)

By the end of May 2001, Jones had accumulated 3.5 points. (Barr Depo. at 45, Ex. 2.1) By the end of June 2002, she had 4 points, and by the end of July her points had increased to 4.5. In August, Plaintiff received an additional 1/2 point, bringing her total to 5, putting her in danger of a final written warning. In light of her record, her supervisor, Defendant Mike Dankworth, met with her on September 24, 2001 to discuss her attendance record. (Barr Depo. at 45, 47-48, Ex. 2.) By the time of the meeting on September 24, 2001, Jones's attendance chart indicated 4.5 points, though Barr later testified that, due to the decision to excuse previously unexcused incidents, it should have been only 4 points. (Barr Depo. at 49, Ex. 2.) Dankworth warned Plaintiff at this meeting that failure to improve in this area would lead to further disciplinary action, up to and including termination. (Dankworth Depo. 30, Ex. 4.)

There followed a 30-day period where Jones received no points, prompting her total to drop to 3.5, and then again to 2.5 by the end of December, 2001. (Barr Depo. at Ex. 2.) By the end of calendar year 2001, Jones had 2.5 absentee points on her record. January 2002 continued her good attendance, so that she had 1.5 points by the end of January 2002. (Barr Depo. at 51, Ex. 2.)

After 1 point was reduced from her record on February 4, 2002 for another period of 30 days with no points, on February 11, 2002 and then again on February 12, 2002, Jones failed to punch in to the time clock properly, resulting in a 1/2 point penalty for each offense. Thus, at the end of

February, Jones absentee points were again at 1.5. *Id.* On March 9, 2002 and March 23, 2002, Jones was absent from work for non-FMLA or other excused reasons, which caused her absentee points to reach 3.5. *Id.* Jones was both late and failed to punch in on April 13, 2002. Dankworth charged her with 1/2 point for these offenses. (Dankworth Depo. at 23-24.) She failed to punch in again on April 15, 2002, causing accumulated points to reach 4.5. (Barr Depo. at 53.)

Due to Jones' continued attendance problems, Dankworth met with her on April 17, 2002. During this meeting, Dankworth issued Jones a second written warning indicating that continued failure to correct her attendance issues would result in further disciplinary action, up to and including termination. Jones responded to the warning by telling Dankworth that she did not agree with her accumulated points because she believed that she had turned in medical documentation to relieve her from working on Saturdays when she needed to care for her nephew. Dankworth, who was her immediate supervisor, had no knowledge of any such documentation and he agreed to ask Human Resources to review their files and agreed that he would also look through Jones' personnel file to determine her exact number of absentee points. Jones' files were reviewed and no such medical documentation existed.[1] (Jones Depo. at 122-125, Ex. 6; Dankworth Depo. at 36-38.)

On April 18, 2002, the day after Dankworth spoke to her about her excessive absenteeism, Jones missed work. While Jones had asked for time off for one hour to attend a house inspection, she missed the entire day. This brought her point total up to 5.5, mandating termination under the Attendance Policy. (Barr Depo. at 53, Ex. 2, Ex. 8.) In view of Jones' points, Select decided to terminate her on May 13, 2002. (Barr Depo. at 55.)

---

[1] Defendants assert that a review of Jones's doctor's files has also failed to turn up any such records.

Jones refers to § 6.1.14 of the Select attendance policy as evidence that Select's supervisors can convert FMLA leave into unexcused leave that warrants points under Select's policy. Doc. 22 at 6, § 6.1.14. None of the points that required Jones's termination, however, were created by the conversion of excused absences into unexcused ones. Barr Depo. at 19. Jones admits that she was never assessed points for FMLA-covered absences. Jones Depo. 119-21.

While Select's policy describes termination as an action that "will be taken" when excessive points are accumulated, the testimony of Barr and Dankworth leaves the impression that Dankworth had discretion in whether or not to terminate Jones. See, e.g., Barr Depo. at 66-67. Similarly, it is not entirely clear who at Select had ultimate authority for deciding whether to terminate an employee. The deponents refer to the decision as Dankworth's, they also refer to his decision being subject to approval by a manager and Director of Human Resources Barr.

Jones describes the Select attendance policy as involving a judgment call to be made by a supervisor in deciding to terminate an employee. Doc. 22 at 4. Assuming the decision to terminate Jones is within the discretion of supervisor Dankworth, the question of whether Jones's use of FMLA leave affected the decision to terminate her presents a jury with a genuine issue of fact in light of Dankworth's testimony:

> Q: Do you know how you came to the conclusion that she had chronic or patterned absences?
>
> A: Yes, ma'am, just over the period of years that I have worked with Alice and that she had been in trouble several times with her attendance, as well as the whole scheme of all the excused and the time needed off.

Dankworth Depo. at 54-55.

Jones's Ohio Prompt Pay Act claim asserts that she was not awarded a bonus that Select offered to employees who referred new employees to the company. Select offered a $100 bonus for referrals hired and employed by Select for a period of at least six months. In order to receive the referral bonus, the employee was required to provide a coupon with the employee's name on it to the prospective job applicant, who would then turn it in to Select with a completed job application. (Jones Depo. at 153-154, Barr Depo. at 24-26.).

Jones asserts that she referred three friends, Betty Glanton and two brothers named Lovett. (Jones Depo. at 156-158.4) The Lovetts were actually a father and son. Like all employees, Jones received coupons to give to referrals. (Jones Depo. at 156.) Despite understanding how the program worked, Jones did not give coupons to Glanton or the Lovetts. (Jones Depo. at 154.) Further, she testified that she never even told Glanton or the Lovetts about the open positions. Instead, she indicated that she was friends with them.

Glanton put Jones's name down as a reference on her job application when Glanton applied for employment with Select on October 5, 2001. Antoine Lanier Lovett applied for employment with Select on August 15, 2001. He did not turn in a coupon with Jones' name on it, nor did he mention Jones anywhere on his application. (Barr Aff. at ¶6, Ex. B.) Antoine L. Lovett, Sr., Antoine Lanier Lovett's father, applied for work with Select on September 27, 2002, five months after Jones's employment with Select was terminated. He did not turn in a coupon with Jones name on it, nor did he mention Jones anywhere on his application. (Barr Aff. at ¶7, Ex. C.)

Jones claims she asked two members of Select management, Mark Wogoman and Doug DuBois, for referral credit approximately two months prior to her termination. (Jones Depo. at

157-158.5). On May 13, 2002, the day Jones was terminated, she claims she again raised the issue of referral credit. She told Wogoman and DuBois that she had "forgot about the program," and wondered if she would still be eligible. Wogoman and DuBois asked Jones whether the employees worked long enough to qualify her for the bonus. (Jones Depo. at 154.) Jones replied that all three individuals were "still working" (though Lovett, Sr. had not yet applied at that point). (Jones Depo. at 154, Barr aff. ex. C.) Select has not paid Jones an award for the referrals.

On May 12, 2005, Jones filed the instant action. On January 16, 2006, Defendants moved for summary judgement. Doc. 18. With a response, Doc. 22, and reply, Doc. 28, filed, the motion is now ripe for decision.

**II.     Standard of Review**

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S., at 250, 106 S. Ct. 2505 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 106 S. Ct. 1348 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S., at 324, 106 S. Ct. 2548.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S., at 255, 106 S. Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

The instant case involves questions of state law. In reviewing an Ohio claim, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co. v.*

*Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the State.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998). Also, to the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id.* (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994).

Finally, in ruling on a motion for summary judgment, "[a] district court is not…obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

**III.     Analysis**

Jones has presented one federal claim and two state law claims. The Court will resolve the federal claims before addressing the state law claim.

**A.     Federal Claims**

In the first count of her complaint, Jones alleges that Select and Dankworth denied Jones the exercise or attempt to exercise her rights under the FMLA by engaging in reprisal for exercising her FMLA rights by terminating her employment. Defendants' motion for summary judgment asserts that Jones was terminated for the legitimate reason of excessive non-FMLA-related absences.

Jones worked for Select starting September 30, 1996, and is an employee as defined by the FMLA.  29 U.S.C. § 2611(2)(a).  Select has continuously employed over 50 employees within 75 miles of Jones' workplace, and is an employer as defined by the FMLA.  29 U.S.C. § 2611(4)(A)(i).  Dankworth is also an employer as defined by the FMLA, as he acted in the interest of Select with respect to Jones and exercised substantial control over Jones's ability to take FMLA leave.  29 U.S.C. § 2611(4)(A)(ii)(I).  Jones was Jeffrey Love's "parent" as defined by the FMLA, as she acted *in loco parentis* to Jeffrey, who is 12 years old.  29 U.S.C. § 2611(7, 12).  Jeffrey has a serious health condition, as defined by the FMLA.  29 U.S.C. § 2611(11).  Pursuant to 29 U.S.C. § 2611, Jones satisfies the FMLA eligibility requirements to care for Jeffrey's serious health condition. 29 U.S.C. § 2612(a)(1)(C).

The FMLA creates protection for employees utilizing FMLA-protected leave:

> (a) Interference with rights
>
> (1) Exercise of rights
>
> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
>
> (2) Discrimination
>
> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. § 2615(a).  The FMLA also creates a cause of action for employees to enforce these rights, allowing them to recover lost wages plus interest, and possible additional liquidated damages up to the amount of the lost wages and interest, plus "a reasonable attorney's fee" and court costs.  29 U.S.C. § 2617(a).

Jones claims to have direct evidence of discrimination that Dankworth and Select interfered with her FMLA rights, obviating the need for a *McDonnell-Douglas prima facie* case analysis. While the copies of the termination documentation submitted to the Court are illegible, Barr read the document as stating, above Mike Dankworth's signature:

> Termination for cause under the new attendance policy. Alice has exceeded the maximum allowable levels as well as the total -- totality of excused and unexcused absences from the period 9/30/96 to 5/12/02.

Barr Depo. at 66. This written explanation and Dankworth's later explanation at his deposition are susceptible to the interpretation that excused absences, that is, FMLA-protected absences, played a role in the decision to terminate Jones.

It appears to the Court from the evidence submitted to it that Dankworth possessed authority to terminate Jones. While Defendants assert that the needed approval of two other Select executives cures any discrimination, this argument fails in the absence of evidence that these executives were responsible for terminations. Cf. *Richardson v. Sugg*, 2006 WL 1445025, at 10 (8th Cir. 2006)(explaining "cat's paw" exception to this rule). A reasonable jury could surmise from Dankworth's statements that Jones's excused FMLA absences motivated Dankworth's decision. Therefore, Defendants' motion will be denied with regard to the FMLA claim.

**B.     Ohio Prompt Pay Act Claim**

Plaintiff's second cause of action is based on Ohio's Prompt Pay Act, Ohio Rev. Code § 4113.15. This statute generally requires all employers to pay employees "the wages earned by them" no less often than twice per month. Ohio Rev. Code § 4113.15(A). If an employer fails to pay earned wages for thirty days past a regularly scheduled payday, the employee may be

entitled to recover liquidated damages in addition to the wages earned. The liquidated damages are calculated as 6% of the amount of wages claimed or $200, whichever is greater. However, where the employer disputes the wage claim, no liquidated damages are due. Ohio Rev. Code § 4113.15(B).

Plaintiff claims that she was owed $300 in "wages" for referring her three friends pursuant to Select's employee referral program. However, it is undisputed that Jones failed to follow the requirements of the referral program and therefore was not entitled to the referral bonuses. Moreover, the referral bonuses do not qualify as "wages" as defined by the Prompt Pay Act. See Ohio Rev. Code § 4113.15(D)(1). Wherefore, the motion for summary judgment will be granted with regard to the Ohio Prompt Pay Act claim.

**C.      Violation of Ohio Public Policy**

Jones's third claim asserts she was terminated in violation of Ohio public policy. Violation of public policy claims run counter to the common-law doctrine of employment-at-will, which generally governs employment relationships in Ohio. Under this doctrine, a general or indefinite hiring is terminable at the will of either the employee or the employer; thus, a discharge without cause does not give rise to an action for damages. *Mers v. Dispatch Printing Co.*, 483 N.E.2d 150 (Ohio 1985). A limited exception exists where an at-will employee is discharged in violation of public policy. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, N.E.2d 981 (Ohio 1990). In determining whether a plaintiff has been discharged in violation of public policy, Ohio courts look at four elements:

>    1.      That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

>       2.      That dismissing employees under circumstances like those
>               involved in the plaintiff's dismissal would jeopardize the
>               public policy (the *jeopardy* element).
>
>       3.      The plaintiff's dismissal was motivated by conduct related
>               to the public policy (the *causation* element).
>
>       4.      The employer lacked overriding legitimate business
>               justification for the dismissal (the *overriding justification*
>               element).

*Collins v. Rizkana*, 69-70, 652 N.E.2d 653 (Ohio 1995) (internal citations and quotations omitted). "[I]n order to bring a cause of action pursuant to *Greeley*…, [an] employee must have been an employee-at-will." *Haynes v. Zoological Society*, at syllabus ¶ 1 (1995).

*Greeley* has been limited, however. The Ohio Supreme Court has determined that a plaintiff may not pursue an Ohio public policy claim where the "clear public policy" is premised upon a statute that provides an adequate remedy. *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 246 (2002) (rejecting the existence of a cause of action for violation of public policy premised upon a violation of the FMLA). Thus, there is no cause of action for violation of Ohio public policy by virtue of the FMLA and the motion for summary judgment will be granted with regard to the Ohio public policy claim.

**D.      Failure to Mitigate Damages**

The motion for summary judgment also seeks a determination that Jones has failed to sufficiently mitigate her damages. The Court finds that there is a genuine issue of material fact on this point, and will deny the motion with regards to failure to mitigate.

**IV.     Conclusion**

Because a reasonable jury could surmise from Dankworth's statements that Jones's excused FMLA absences motivated Dankworth's decision, Defendants' motion is **DENIED** with regard to the FMLA claim.  Because Jones failed to follow the requirements of the referral program and because the referral bonuses do not qualify as "wages" as defined by the Prompt Pay Act, the motion is **GRANTED** with regard to the Ohio Prompt Pay Act claim.  Because there is no cause of action for violation of Ohio public policy by virtue of the FMLA, the motion for summary judgment is **GRANTED** with regard to the Ohio public policy claim.  Because there is a genuine issue of material fact as to whether Jones fully mitigated her damages, the motion is **DENIED** with regard to this question.

The parties failed to show for the final pretrial conference that was scheduled to take place in chambers on the June 9, 2006 at 4:00.  The parties proposed final pretrial order is also overdue.  The Court will contact the parties to reset a final pretrial conference.  The parties are to file a joint proposed pretrial order forthwith.  A trial of unresolved issues remains set for July 10, 2006 at 9:00.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, June 16, 2006.

/s/ Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE